UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                     Case No. 16-20723

vs.                                    HON. MARK A. GOLDSMITH

MARIA ELENA LEVYA,

        Defendant.
_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION FOR RECONSIDERATION (Dkt. 212)**

In June 2018, a jury convicted Defendant Maria Elena Levya of (i) conspiracy to possess with intent to distribute a controlled substance and (ii) attempted possession of a controlled substance with intent to distribute. Jury Verdict Form (Dkt. 150). The Court immediately remanded Levya into the custody of the U.S. Marshals. In December 2018, the Court sentenced Levya to 180 months' imprisonment. Judgment (Dkt. 188).

In June 2020, Levya filed a motion for compassionate release (Dkt. 202), arguing that her fear that her hypertension, obesity, and "history of heart surgery" increased her risk of severe illness and death from COVID-19. After reviewing this motion on the merits, the Court denied it (Dkt. 210). This matter is now before the Court on Levya's motion for reconsideration (Dkt. 212). For the reasons that follow, the Court denies Levya's motion.[1]

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2). In addition to the motion, the briefing includes the Government's response (Dkt. 217).

## I. ANALYSIS

The First Step Act (FSA) modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000, 1003–1004 (6th Cir. 2020).[2] Before granting a compassionate release motion, a district court must engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons warrant [a sentence] reduction"; (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the United States Court of Appeals for the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at 1109. It has further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the [FSA], district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.

---

[2] Before an inmate moves for compassionate release under § 3582(c)(1), the inmate must either exhaust his or her administrative remedies with the Bureau of Prisons (BOP) or wait 30 days from when the inmate filed a request with his or her warden. 18 U.S.C. § 3582(c)(1)(A); United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020). Here, the Government concedes that Levya has met the exhaustion requirement. See Resp. at 4.

Even if the Court were to reconsider the merits of Levya's motion for compassionate release, it would still deny the motion for two reasons: (i) extraordinary and compelling circumstances do not exist, and (ii) even if such circumstances did exist, the § 3553(a) factors do not support Levya's release. Each reason is addressed in turn.

### A. Extraordinary and Compelling Circumstances

Levya argues that the following constitute extraordinary and compelling reasons to release her: (i) her fear of contracting and suffering severe illness from COVID-19 and (ii) her rehabilitation efforts. Mot. for Reconsideration at 1. The Court addresses each argument in turn.

#### i. COVID-19

With respect to motions for compassionate release premised on a defendant's fear of contracting and suffering severe illness from COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Prior to the development of the COVID-19 vaccines, courts would generally consult the guidance on high-risk factors published by the Centers for Disease Control and Prevention (CDC) to determine whether a defendant's specific conditions placed the defendant at a higher risk of suffering severe illness from COVID-19. See United States v. Elias, 984 F.3d 516, 521 (6th Cir. 2021). However, following the development of the vaccines, courts now examine whether a defendant has been offered a COVID-19 vaccine, because "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021). Under either approach, Levya's motion fails.

In her original motion for compassionate release, Levya argued that her "history of heart surgery," hypertension, and obesity increased her risk of severe illness and death from COVID-19. Mot. for Compassionate Release at 1. In her present motion for reconsideration, she adds that she suffers from "Hep B (Fatty Liver)." Mot. for Reconsideration at 1. Although some of these conditions are recognized by the CDC as conditions that can increase an individual's likelihood of severe illness from the virus, ultimately, none of these conditions justifies releasing Levya.

The CDC recognizes "heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and possibly high blood pressure (hypertension)" as conditions that "can" make it more likely for an individual to get severely ill from COVID-19.[3] It is unclear whether Levya suffers from coronary artery disease (i.e., heart disease), as she asserts. A medical note from July 2021 reflects that Levya reported undergoing an "emergency surgery for some kind of aortic event," but "has had no further issues since then," "denies any heart failure problems," "has no previous other cardiovascular history," and "has no premature coronary artery disease in the family [and] . . . no other known aortic issues." Def. Medical Records at PageID.2647 (Dkt. 214). That note also indicates that a cardiac exam revealed a normal heart rate, regular heart rhythm, and normal sound. Id. However, that same note—in another section in which the healthcare provider recommends increasing Levya's blood pressure medication—references Levya's "aortic disease." Id.

Even assuming that Levya has heart disease, such a condition does not justify releasing a defendant where the condition can be managed and monitored in the prison environment. See, e.g., United States v. Bell, No. 18-cr-60115-BLOOM, 2021 WL 917675, at *4–5 (S.D. Fla. Mar.

---

[3] CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 21, 2022).

4

10, 2021) (holding that an inmate who suffered from heart disease and other conditions did not establish extraordinary and compelling reasons for compassionate release where the inmate's medical records revealed that he was receiving medication and that the BOP was otherwise monitoring his conditions); United States v. Slone, No. 7:12-05-KKC-4, 2021 WL 164553, at *1 (E.D. Ky. Jan. 19, 2021) (holding that inmate who suffered from heart disease and other conditions did not establish extraordinary and compelling reasons for compassionate release because his conditions did not diminish his ability to provide self-care within the prison environment). Levya's medical records reflect that her heart conditions are being actively monitored by the BOP. Levya has not argued—nor does the record establish—that any heart condition that she may have cannot be managed and monitored in prison.

Relatedly, Levya's medical records confirm that she has hypertension. However, courts "routinely" decline to grant compassionate release where an inmate's hypertension can be well-managed through medication. United States v. Ackerman, No. 11-740-KSM-1, 2020 WL 5017618, at *5 (E.D. Pa. Aug. 25, 2020) (citing cases); see also United States v. Evans, No. 3:18-cr-637, 2021 WL 424317, at *2 (E.D. Mich. Feb. 8, 2021) (denying motion for compassionate release based on inmate's fear that his high blood pressure increased his risk of severe illness of COVID-19 where the inmate could take medication daily to manage his hypertension). Levya's medical records indicate that her hypertension is currently being managed through medication. See BOP Medical Records at PageID.2698 (Dkt. 219).

As for Levya's alleged obesity, the CDC's guidance reflects that being overweight—defined as a body mass index (BMI) greater than 25 $kg/m^2$—can increase an individual's

5

likelihood of severe illness from COVID-19.[4] Levya does not indicate her BMI. Moreover, her medical records indicate her present weight (196 pounds as of October 2021) but not her present height, which is also needed to calculate her BMI.[5] Thus, the Court cannot determine whether Levya is obese as she claims. But even assuming that Levya is overweight, "there is nothing uncommon about the risks that Defendant faces to serious illness because of [her] . . . obesity" because "obesity and overweight are common conditions; 42% of American adults are obese and 32% are overweight." United States v. Humphrey, No. 2:15-cr-20329-4, 2021 WL 1422765, at *2 (E.D. Mich. Apr. 15, 2021) (punctuation modified). Further, "[w]ith monitoring and effective lifestyle changes, high [BMI] can be improved, if not fully treated." Id. (punctuation modified). Because Levya can take proactive steps to reduce her weight, her weight does not warrant compassionate release.

As for Levya's fatty liver, the CDC recognizes that chronic liver diseases, including fatty liver disease, can make an individual more likely to get severely ill from COVID-19.[6] However, a fatty liver does not entitle a defendant to compassionate release if the condition can be managed in the prison setting. See, e.g., United States v. Lindsey, No. 19-00051-BAJ-RLB, 2021 WL 5412584, at *1–2 (M.D. La. Nov. 19, 2021) (denying compassionate release to inmate who suffered from—among other conditions—fatty liver disease, because "well-controlled . . . chronic

---

[4] CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 21, 2022).

[5] According to the CDC, BMI is calculated by dividing a person's weight (measured in kilograms) by the square of that person's height (measured in meters). See CDC, "About Adult BMI," https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html (last visited Jan. 21, 2022).

[6] CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 21, 2022).

conditions do not establish an extraordinary and compelling reason to justify release, even if those conditions increase the risk of adverse outcomes from COVID-19"). Although Levya's medical records reflect that she has a fatty liver, Levya has not argued—and her medical records do not reflect—that her fatty liver cannot be managed in the prison setting. As a result, this condition does not warrant granting her compassionate release.

Moreover, Levya's fear of suffering severe illness from COVID-19 is non-compelling because she has been offered—but refused—a COVID-19 vaccine. See Lemons, 15 F.4th at 751 ("[A] defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction."). Specifically, Levya was offered the Pfizer-BioNTech vaccine in April 2021, but she declined to accept it. Vaccine Refusal (Dkt. 218).

For these reasons, Levya's fear of contracting and suffering severe illness from COVID-19 is not a compelling and extraordinary reason to release her.

### ii. Rehabilitation

Levya also appears to argue that her rehabilitation efforts warrant releasing her. Mot. for Reconsideration at 1. However, "Congress was emphatically clear that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" United States v. Hunter, 12 F.4th 555, 572 (6th Cir. 2021) (quoting 28 U.S.C. § 994(t)). Levya has not shown any other reason to release her, and her rehabilitation is insufficient to constitute an extraordinary and compelling reason to release her.

Thus, Levya has not shown an extraordinary or compelling reason to grant her compassionate release. Even if she had, her release would still be unwarranted based on the § 3553(a) factors, as explained below.

### B. Section 3553(a) Factors

Before granting a sentence reduction under the FSA, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant.

Levya's crimes were undoubtedly serious. She was convicted of conspiracy and attempt to possess with intent to distribute heroin. Heroin is a Schedule I controlled substance, meaning that it has no accepted medical use and a high potential for abuse. The circulation of such addictive "drugs presents a grave danger to the community's health and wellbeing." United States v. Smith, No. 10-20388, 2021 WL 3077879, at *3 (E.D. Mich. July 21, 2021) (finding that the § 3553(a) factors weighed against granting compassionate release to a defendant who was convicted for possessing with intent to distribute heroin and cocaine).

Levya contends that she should be granted compassionate release because—although she began serving her 180-month sentence just a few years ago in June 2018—she has already been rehabilitated. Mot. for Reconsideration at 1. However, Levya's criminal history casts significant doubt as to her ability to rehabilitate so quickly. In 2007, Levya was sentenced to 21 months' imprisonment for misprision of a felony, having pleaded down from a charge as a co-conspirator in her then-husband's large-scale drug trafficking operation. Presentence Investigation Report (PSR) ¶ 39. This prior sentence was apparently insufficient to deter Levya from committing further drug crimes, as she committed the instant drug offense just a few years after completing supervised release for her prior offense. Id. ¶¶ 12–16. As this Court explained during Levya's sentencing, Levya "wasted the opportunity given to her in the prior case to stay on the right side of the law"; "[s]he was given a relatively short sentence for the magnitude of the drug enterprise

involved in that case, but she did not learn from that experience unfortunately." Sentencing Tr. Vol. 2 at 14 (Dkt. 196). In light of this history, the Court has no confidence that Levya would not commit additional drug crimes if released just a few years into her 180-month sentence.

To make matters worse, when Levya was arrested for the instant crime, she falsely told law enforcement officials that she had never been involved in a drug crime like this before. Id. ¶ 17. She also fabricated a story about meeting an individual in a K-Mart parking lot in connection with the drug transaction with which she was involved. Id. In addition, Levya failed to tell pretrial services about her son, which enabled her to, for a time, conceal the fact that she had been involved in an additional drug transaction with her son. Id. ¶ 18. Further, she told law enforcement officials that she could not understand English, even though she reportedly studied English while in custody and/or under supervision for her prior crime and took an English course through a college. Id. ¶ 66. She also falsely testified during a suppression hearing that a law enforcement agent threatened her. Sentencing Tr. Vol. 2 at 4–6. Levya's perjury during the suppression hearing led the Court to apply an obstruction of justice enhancement at her sentencing. Id. Levya's incredible lack of respect for the law—as demonstrated by her pervasive dishonesty throughout the prosecution of this case—gives the Court zero assurances that she would not commit future crimes and would abide by conditions of supervised release if released at this time.

Finally, releasing Levya at this time would fail to promote respect for the law for another reason: she has served less than half of her 180-month sentence. See, e.g., Ruffin, 978 F.3d at 1008 (affirming district court decision that § 3553(a) factors did not support a sentence reduction in part because the defendant was yet to serve even half of his sentence); United States v. Richards, No. 12-20372, 2021 WL 912389, at *3 (E.D. Mich. Mar. 10, 2021) ("[A]llowing Defendant to be

9

released after serving less than half of his sentence would not promote respect for the law or proper deterrence, [or] provide just punishment . . . .").

The § 3553(a) factors, therefore, weigh heavily against granting Levya's motion.

## II.  CONCLUSION

For the reasons stated above, Levya's motion for reconsideration (Dkt. 212) is denied.

SO ORDERED.

Dated: February 4, 2022  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 4, 2022.

s/Karri Sandusky
KARRI SANDUSKY
Case Manager